# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

---

Yvonne D. Garth,

        Petitioner,

v.

United States of America,

        Respondent.

Civil No. 09-1160 (RHK)
Criminal No. 06-204 (1) (RHK/SRN)

**MEMORANDUM OPINION AND ORDER**

---

Yvonne D. Garth, Greenville, Illinois, 62246, Petitioner, pro se.

Michael L. Cheever, Assistant United States Attorney, Minneapolis, Minnesota, 55415 for Respondent.

---

## INTRODUCTION

This matter is presently before the Court pursuant to a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Doc. No. 86), which has been filed, pro se, by Defendant Yvonne D. Garth, (hereafter "Petitioner"). The Motion has been fully briefed by the parties, and the Court is now prepared to rule on it. For the reasons discussed below, Petitioner's Motion will be denied.

## BACKGROUND

In July 2006, Petitioner was indicted on ten counts of conspiring to defraud the Government, and filing false claims against the Government. In Counts (1) and (2) of the indictment, Petitioner was charged with conspiring to prepare and file false tax returns and false W-2 forms. In Counts (3) through (10), Petitioner was charged with helping eight other individuals make false claims for

tax refunds. Attorney Rick E. Mattox (hereafter "Mattox") was appointed to serve as Petitioner's defense counsel.

On or about July 17, 2006, Assistant United States Attorney Michael L. Cheever (hereafter "the AUSA") sent a letter to Mattox, which was accompanied by a six-page proposed "plea agreement."[1] The proposed plea agreement provided that (i) Petitioner would plead guilty to Count (1) of the indictment; (ii) the Government would move to dismiss the remaining counts of the indictment; (iii) Petitioner would be sentenced under the applicable sentencing guidelines; and (iv) Petitioner would not object to any restitution order "up to the amount of $125,000.00." The plea agreement also included certain stipulations pertaining to sentencing factors, which would have resulted in a guidelines sentence between 30 and 51 months.

Petitioner acknowledges that she did talk to Mattox about a possible guilty plea in this matter. (See Petitioner's Reply Mem. (Doc. No. 91) pp. 4, 6.) However, Petitioner claims that Mattox never showed her a copy of the Government's proposed plea agreement, and never disclosed to her the specific terms and conditions of that agreement. (See Petitioner's Mem. (Doc. No. 87) Exh. D, Garth Aff., p. 1, ¶¶ 4-5.) Petitioner further claims that, in fact, Mattox "continuously" misled her about the terms of the proposed plea agreement, by telling her that she "would have to admit to every charge in the indictment." (Id., ¶ 7.)

Petitioner also contends that Mattox "repeatedly assured" her that her sentence "would be around six (6) months." (Id., ¶ 7.) According to Petitioner, "Mr. Mattox always informed [her] that

---

[1] The AUSA's letter is attached to Respondent's Memorandum (Doc. No. 88) as Exhibit 1, and the proposed plea agreement is attached to Petitioner's Memorandum (Doc. No. 87) as Exhibit I.

she could plead guilty to the charges in the indictment, but that even if Petitioner were found guilty at trial, she would still receive a sentence of six months in the half-way house." (Petitioner's Mem. (Doc. No. 87) p. 3.[2]) The record also includes a letter that Petitioner wrote to the AUSA, in which she states that the AUSA also told her that she "would only receive six months in a halfway house."[3] Thus, the record shows that Petitioner believed that even if she declined to plead guilty, and a jury subsequently found her guilty as indicted, she would receive only a six-month sentence.

Petitioner never accepted the plea agreement that was proffered by the Government, and her case was tried before a jury in December 2006. Count (10) of the indictment was dismissed before trial on the Government's motion, due to the unavailability of a prosecution witness. The jury found Petitioner guilty on Counts (1) through (8), and not guilty on Count (9). The Court later imposed a 57-month sentence, which was at the low end of the applicable guidelines range of 57 to 71 months. The Court also imposed a three-year term of supervised release, and ordered Petitioner to pay restitution in the total sum of $163,306.00. (See Sentencing Judgment (Doc. No. 65).)

Petitioner subsequently challenged her conviction and sentence on direct appeal, but all of her claims were rejected on the merits. The Eighth Circuit Court of Appeals affirmed the judgment of the District Court in a published decision dated September 3, 2008. United States v. Garth, 540 F.3d 766 (8th Cir. 2008).

---

[2] A letter to Mattox dated November 3, 2008, reiterates Petitioner's assertion that Mattox told her that she "would only get 6 months in a halfway house." (Petitioner's Mem. (Doc. No. 87) Exh. G.)

[3] This statement appears in a letter addressed to the AUSA, which is dated October 22, 2008. A copy of that letter is attached to Respondent's Mem. (Doc. No. 88) as Exh. 4.

A few weeks after Petitioner's conviction and sentence were affirmed on direct appeal, she wrote a short letter to the undersigned District Court Judge, in which she indicated that she "would like to inquire about a Plea Bargain." (Petitioner's Mem. (Doc. No. 87) Exh. E.) Petitioner has not explained what prompted her to write that letter when she did, nor has she explained why she believed, at that time, that there was a formal proposed "Plea Bargain." A copy of Petitioner's letter to the Court was sent to the AUSA, and the AUSA responded to the letter by sending Petitioner a copy of the Government's proposed plea agreement from July 2006.[4] Upon receiving the copy of the plea agreement, Petitioner wrote separate letters to the AUSA, to the Court, and to Mattox, contending that (a) she had not previously known about the proposed plea agreement, and (b) she would have accepted the agreement if she had known about it.[5]

Petitioner subsequently filed her present Motion for relief under 28 U.S.C. § 2255, which raises a claim of ineffective assistance of counsel. Petitioner claims that she was deprived of her constitutional right to effective assistance of counsel, because Mattox did not give her a copy of the plea agreement immediately after he received it in July 2006, and he never fully informed her of the content of the proffered plea agreement. Petitioner further claims that if she had been fully informed about the terms of the plea agreement, she would have accepted it. The Court finds that Petitioner's ineffective assistance of counsel claim is not sustainable.

---

[4] A copy of the AUSA's cover letter that accompanied the plea agreement is attached to Respondent's Memorandum (Doc. No. 88) as Exhibit 3.

[5] The letter to the AUSA, dated October 22, 2008, is attached to Respondent's Memorandum (Doc. No. 88) as Exhibit 4; the letter to the Court, dated October 30, 2008, is attached to Petitioner's Memorandum of Law in Support of § 2255 Motion (Doc. No. 87) as Exhibit F; and the letter to Mattox, dated November 3, 2008, is attached to Petitioner's Memorandum of Law in Support of § 2255 Motion (Doc. No. 87) as Exhibit G.

# ANALYSIS

## A. Standard of Review

Claims of ineffective assistance of counsel are governed by the two-part test prescribed by Strickland v. Washington, 466 U.S. 668 (1984). Under the Strickland test, a defendant claiming ineffective assistance of counsel must show (a) that his or her attorney's performance was deficient and (b) that the attorney's deficient performance prejudiced the defendant's case.

Counsel's performance is considered deficient only if it falls outside the wide range of professionally competent assistance. Harris v. Bowersox, 184 F.3d 744, 756 (8th Cir. 1999), cert. denied, 528 U.S. 1097 (2000). Courts considering claims of ineffective assistance of counsel must presume that attorneys provide effective representation, and "will not second-guess strategic decisions or exploit the benefits of hindsight." Henderson v. Norris, 118 F.3d 1283, 1287 (8th Cir. 1997), cert. denied, 522 U.S. 1129 (1998). See also Strickland, 466 U.S. at 689 ("Judicial scrutiny of counsel's performance must be highly deferential."). To meet the "prejudice" part of the Strickland test, the defendant must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694. "Strickland's two-part test applies to ineffective assistance claims arising out of the plea process." Engelen v. United States, 68 F.3d 238, 241 (8th Cir. 1995), citing Hill v. Lockhart, 474 U.S. 52, 57 (1985).

A criminal defense lawyer is obligated to inform his or her client of any bona fide plea agreement offered by the prosecution, and a breach of that duty normally will satisfy the first prong of the Strickland test. See Johnson v. Duckworth, 793 F.2d 898, 902 (7th Cir.) ("in the ordinary case criminal defense attorneys have a duty to inform their clients of plea agreements proffered by the

5

prosecution, and that failure to do so constitutes ineffective assistance of counsel under the sixth and fourteenth amendments"), cert. denied, 479 U.S. 937 (1986).  To satisfy Strickland's prejudice requirement, in a case involving allegedly deficient advice regarding a plea agreement, the defendant must show that he or she would have accepted the agreement, if it had been properly presented by counsel.  Engelen, 68 F.3d at 241.  As our Court of Appeals explained in Sanders v. United States, 341 F.3d 720 (8th Cir. 2003), cert. denied, 540 U.S. 1199 (2004), "[w]hen the defendant's claim is that counsel misadvised him of the relative advantages of pleading guilty rather than proceeding to trial, in order to show prejudice, the defendant 'must show that, but for his counsel's advice, he would have accepted the plea.'" Id. at 722, quoting Engelen, supra.

"A prisoner is entitled to an evidentiary hearing on a section 2255 motion unless the motion, files and records of the case conclusively show that the prisoner is not entitled to relief." Engelen, 68 F.3d at 240.  "Accordingly, a petition can be dismissed without a hearing if (1) the petitioner's allegations, accepted as true, would not entitle the petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact." Id.  When a § 2255 movant claims ineffective assistance of counsel based on inadequate advice pertaining to a plea bargain, an evidentiary hearing is required only if the movant "present[s] some credible, non-conclusory evidence that he would have pled guilty had he been properly advised." Sanders, 341 F.3d at 722.

**B. Discussion**

In this case, the Court finds that Petitioner's ineffective assistance of counsel claim is unsustainable, and that no evidentiary hearing is required, because the record shows that Petitioner cannot satisfy Strickland's prejudice requirement.  Even if Mattox did not adequately advise

6

Petitioner about the Government's proffered plea agreement,[6] Petitioner's ineffective assistance of counsel claim fails, because she is unable to show that she would have accepted the agreement, and would have pled guilty, if the proposed agreement had been more fully explained. Petitioner's conclusory assertion that she would have accepted the agreement, if she had known more about it, is simply not credible . This determination is based on several factors.

First, there is nothing in the record, including Petitioner's substantial post-conviction submissions, which suggests that Petitioner had any genuine inclination to plead guilty to any of the charges against her in this case. See Engelen, 68 F.3d at 241 (defendant's ineffective assistance of counsel claim based on allegedly defective advice about a plea agreement was properly dismissed, without an evidentiary hearing, where "[t]he record is completely barren of any evidence that [the defendant] would have acknowledged his guilt prior to trial"). Petitioner candidly acknowledges that she did talk to her lawyer about "a possible guilty plea" prior to her trial, and it can reasonably be assumed that if she had been interested in a guilty plea at that time, she would have engaged her attorney in a more detailed discussion about that option. Such a discussion undoubtedly would have enhanced Petitioner's understanding of the plea agreement that was offered by the Government. In fact, however, it appears from the record that Petitioner never showed any interest in pleading guilty until after her conviction and sentence had been affirmed on direct appeal. Only then did she start asking about the possibility of a plea agreement, and there is no reason to believe that she had any

---

[6] Needless to say, the Court is simply assuming – not finding – that Mattox did not adequately advise Petitioner about the terms of the plea agreement. It should be noted that Mattox has filed an affidavit which contradicts Petitioner's contention that she was never told about the details of the proposed plea agreement. According to that affidavit, Mattox reviewed the plea offer on July 17, 2006, and the next day he "discussed" it with Petitioner during a 1.7 hour conference at her home, "and later in several telephone calls." (Respondent's Mem. (Doc. No. 88) Exh. 2, Mattox Aff., p. 1, ¶¶ 2-3.)

7

prior interest in pleading guilty. Indeed, Mattox has confirmed that Petitioner "always refused to plead guilty." (Respondent's Mem. (Doc. No. 88) Exh. 2, Mattox Aff., p. 2, ¶ 8.)

The lack of any evidence suggesting that Petitioner had any predisposition to plead guilty significantly undermines her present (belated) assertion that she would have accepted the proposed plea agreement, if Mattox had told her more about it. As the Court of Appeals pointed out in Sanders: "A defendant who maintains his innocence at all the stages of his criminal prosecution and shows no indication that he would be willing to admit his guilt undermines his later § 2255 claim that he would have pleaded guilty if only he had received better advice from his lawyer." 341 F.3d at 723.

Furthermore, Petitioner thought she would get a six-month sentence if convicted, and that erroneous notion would have caused her to reject the plea agreement, regardless of how it had been presented. A more complete explanation of the plea agreement would not have made any difference to Petitioner if she thought – as she claims – that she would get only a six-month sentence if she went to trial and was convicted. Petitioner obviously would not have accepted a plea agreement that provided a minimum sentence of 30 months, because she had concluded that she was facing only a six-month sentence.

Petitioner has tried to blame Mattox and the AUSA for her misunderstanding about her potential sentence, contending that both Mattox and the AUSA told her that she would only get a six-month "half-way house" sentence if convicted. However, that is simply not believable. It is highly unlikely that Mattox would have provided such outlandishly inaccurate information to his client, and he, of course, denies it. (Respondent's Mem. (Doc. No. 88) Exh. 2, Mattox Aff., p. 2, ¶ 9.) It is even more unlikely that the AUSA also would have told Petitioner she "would only

receive six months in a halfway house." (Respondent's Mem. (Doc. No. 88), Exh. 4.)

It is unclear why Petitioner thought she would get only a six-month sentence if convicted, but she cannot credibly blame Mattox and the AUSA for that misunderstanding. As no one else can credibly be blamed, Petitioner alone must be held responsible for her misapprehension of her potential sentence. Because Petitioner somehow convinced herself that she would receive only a six-month sentence, the Court finds that she would not have accepted the proffered plea agreement, even if she had been more fully informed about its terms.

Respondent has also pointed out that Petitioner's credibility on the prejudice issue is undermined by her initial post-appeal letter to the Court. (Petitioner's Mem. (Doc. No. 87), Exh. E.) In that letter, Petitioner initially stated that she "would like to inquire about a Plea Bargain that was not offered" to her. Later in the same letter, she stated that she "would have agreed" to the terms of that offer. Petitioner has not explained how she could have been confident that she would have accepted the plea agreement when, at that time, she allegedly did not know the terms of the offer – or whether it even existed. This inconsistency seriously undermines the credibility of Petitioner's claim that she would have accepted the plea agreement if only it had been properly presented to her.

Finally, Petitioner's credibility is substantially diminished by reason of the crimes that the jury found her guilty of committing. Those crimes involved blatant fraud and deceit. Petitioner's conviction in this case shows that she has a significant capacity for dishonesty. For this additional reason, the Court rejects Petitioner's current contention that she would have accepted the plea agreement if it had been properly presented.

For all of the reasons discussed above, the Court finds that Petitioner is unable to satisfy the

prejudice requirement of her ineffective assistance of counsel claim. No evidentiary hearing is required, because Petitioner's contention that she would have accepted the plea agreement, if it had been properly presented to her, is not supported by the record, and it simply is not credible. See Sanders, 341 F.3d at 722 (to warrant an evidentiary hearing and avoid dismissal, "'the movant must present some credible, non-conclusory evidence that he would have pled guilty had he been properly advised'"), quoting Engelen, 68 F.3d at 241; see also Moses v. United States, 97-3938 (8th Cir. 1999), 1999 WL 195675 (unpublished opinion), at *1 (defendant's "conclusory statements alone are not the sort of objective evidence required to establish a reasonable probability that he would have accepted the plea agreement absent his counsel's allegedly deficient performance"). Thus, the Court concludes that Petitioner's ineffective assistance of counsel claim is not sustainable, and her motion for relief under 28 U.S.C. § 2255 must be DENIED on the merits, and with prejudice.

## CERTIFICATE OF APPEALABILITY

A federal prisoner may not appeal a final order in a proceeding under § 2255, without first securing a Certificate of Appealability. 28 U.S.C. § 2253(c)(1)(B). A federal district court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant" in a § 2255 proceeding. Rules Governing Section 2255 Proceedings For The United States District Courts, Rule 11. A federal district court cannot grant a Certificate of Appealability unless the prisoner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) (emphasis added); see also Tiedeman v. Benson, 122 F.3d 518, 522 (8th Cir. 1997).

A Certificate of Appealability will not be granted simply because the appeal is pursued in good faith and raises a non-frivolous issue. See Kramer v. Kemna, 21 F.3d 305, 307 (8th Cir. 1994)

("[g]ood faith and lack of frivolousness, without more, do not serve as sufficient bases for issuance of a certificate under 28 U.S.C. § 2253"). Instead, the prisoner must satisfy a higher standard, showing that the issues to be raised on appeal are debatable among reasonable jurists," that different courts "could resolve the issues differently," or that the issues otherwise warrant further review. Flieger v. Delo, 16 F.3d 878, 882-83 (8th Cir.), cert. denied, 513 U.S. 946 (1994) (citing Lozado v. Deeds, 498 U.S. 430, 432, (1991) (per curiam)); see also Cox v. Norris, 133 F.3d 565, 569 (8th Cir. 1997), cert. denied, 525 U.S. 834 (1998).

The Court finds that the resolution of Petitioner's current claims is not "debatable among reasonable jurists." Flieger, 16 F.3d at 882-83. Nor do Petitioner's claims present any important questions of law that warrant appellate review. Thus, the Court concludes that Petitioner is not entitled to a Certificate of Appealability in this matter.

## CONCLUSION

Based upon the foregoing, and all of the files, records and proceedings herein,

**IT IS ORDERED:**

(1) Petitioner's Motion to vacate her conviction and sentence pursuant to 28 U.S.C. § 2255 (Doc. No. 86) is **DENIED WITH PREJUDICE**; and

(2) Petitioner will not be granted a Certificate of Appealability if she attempts to appeal this Order to the Eighth Circuit Court of Appeals.

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Dated: December 10, 2009

                                                  s/Richard H. Kyle
                                                  RICHARD H. KYLE
                                                  United States District Judge